Boynton, J.
The denial that the plaintiffs were the owm ers of the note in suit, and the allegation that they were not entitled to maintain a joint action thereon seem to be founded in the belief that a joint ownership of the same is indispensable to their right to recover; and hence, that if the note and mortgage were the separate property of the wife, *582 the husband .was improperly joined as plaintiff, and the rendition of a joint judgment in favor of both was erroneous.
It was held, in Stoutenburg v. Lybrand, 13 Ohio St. 228, that “ allegations or denials that a party was, at a particular time, the owner or holder of a promissory note, are not mere conclusions of law. As statements of fact, they may be indefinite, but this defect is not the subject of demurrer.” It was also held, in Masters v. Freeman, 17 Ohio St. 323, that “in an action brought by two plaintiffs for the recovery of a personal judgment on an alleged indebtedness of the defendant to the plaintiffs jointly, the fact that the cause of action is not joint, but several in its character, constitutes a good defense.” In neither of these cases was the relation of husband and wife involved; nor were any of the lights, privileges, or disabilities incident thereto. Hence, neither of them is an authority for holding that a joint judgment can not be rendered in favor of husband and wife upon a claim or cause of action belonging to the wife. The denial that the plaintiff's were the owners of the note in suit, or that anything was due the plaintiffs thereon, coupled with the claim that a joint action could not be maintained, when considered in conjunction with the admitted facts, must be held to have been intended only to put in issue the right of the plaintiffs to recover without establishing a joint ownership in the note. That such ownership is not necessary to the right of the husband and wife to join is well settled. 1 Chitty Pl. (16 Am. Ed.) 35; Philliskirk v. Pluckwell, 2 M. & Sel. 393. Had the answer in the present case stated facts from which it appeared that the note was the sole property of the wife, the same object would have been accomplished that was sought by the denial.
It appeared from the uncontroverted facts that the note, payable to the order of Mrs. Carter, and unindorsed by her, was due and unpaid, and by the defendant’s express admission, that he executed and delivered the note and mortgage as set forth in the petition. In the light of these facts, to *583 interpret the defendant’s denial of the plaintiffs’ ownership of the note to mean that Mrs. Carter had no title thereto, would place the defendant in the position of admitting title in her in one sentence and denying it in another. The question, then, is resolved into this: Was it proper to give a joint judgment in favor of husband and wife upon a debt or chose in action belonging-to the wife? In other words, wTas the husband properly united in the action as a party plaintiff?
The answer to this question depends upon the construction to be given to section 28 of the code, as amended March 30, 1874. 71 Ohio L. 47. That section is as follows :
“Where a married woman is a party, her husband must be joined with her, except, that when the aetio*u concerns her separate property, or is upon a written obligation, contract, or agreement signed by her, or is brought by her to set aside a deed or will; or if she be engaged as owner or partner in any mercantile or other business, and the cause of action grows out of or concerns such business, or is between her and her husband, she may sue and be sued alone. And in all cases where she may sue and be sued alone, the like proceedings shall be had and the like judgment rendered aud enforced in all respects as if she were an unmarried woman. And in every such case her separate property arid estate shall be liable for any judgment rendered therein against her, to the same extent as would the property of her husband were the judgment rendered against him; provided that she shall, be entitled to the benefit of all the exemption laws of the state to heads of families. But in no case shall she be required to prosecute or defend by her next friend.”
Under the section as originally enacted, where the action concerned the separate property of the wife, she was authorized, at her election, to sue, with her husband or without him, by her next friend; aud where the action was between herself aud her husband, she was required to prosecute and defend by her next friend in all actions *584 other than for divorce and alimony. One of the material changes made in the section, as amended April 18, 1870 (67 Ohio L. Ill), was, that in no case should the wife be required to prosecute or defend by her next friend. But there has been no material change, by either amendment, in the right of the wife to join her husband. It is very clear that under the section as originally enacted, or as it now stands, if the note and mortgage sued on did not belong to the separate estate of the wife, the husband would be, and is, a necessary party. So would he have been, in such case, at common law. 1 Chitty PI. (16 Am. ed.) 33; Pomeroy’s Remedies, § 191. But if they are the separate property of the wife, she is clothed with full capacity to sue alone. But power to sue alone does not involve the necessity of so doing. She may or not at her election.
The rule is not uniform in the different states having like statutes.
In'New York, after repeated adjudications on both sides of the question, the rule seems to be now settled, that in actions relating to the separate property of the wife the husband is an improper party. Palmer v. Davis, 28 N. Y. 242; Ackley v. Tarbox, 31 N. Y. 564; Draper v. Stouvenal, 35 N. Y. 507. In Indiana, Gee v. Lewis, 20 Ind. 149: California, Corcoran v. Doll, 32 Cal. 82; Calderwood v. Pyser, 31 Cal. 333: Minnesota, Kennedy v. Williams, 11 Minn. 314: Iowa, Kramer v. Conger, 16 Iowa, 434: and Wisconsin, Norval v. Rice, 2 Wis. 22; and Botkin v. Earl, 6 Wis. 393, the rule is held to be the other way. In the latter states it is held that the language “ may sue or be sued alone ” is permissive, and authorizes the wife, in actions brought by her concerning her separate property, to unite the husband or not, at her election. In Pomeroy on Remedies and Remedial Rights, § 238, it is said that “ wherever the general rule as above described prevails, wherever it is provided that the wife may sue alone in actions concerning her separate property, and in certain others, as designated, it is generally, if not universally, held, that the language of the statute, ‘ may sue,’ is permissive and not *585 compulsory; she has her option to sue in her own name alone, or to unite her husband as a co-plaintiff; either mode of bringing the action is legal and proper.”
This construction we believe to be the correct one. It carries into effect the plain and ordinary meaning of the words of the statute, and, presumably, the design of the legislature. The language of the section, “ and in all cases where she may sue and be sued alone, the like proceedings shall be had and the like judgment rendered and enforced in all respects as if she were an unmarried woman,” would seem at first view to require such action to be brought by her alone. But such evidently was not its object. Previous provision had been made respecting who should be parties in all cases where the rights of the wife were involved.
The obvious purpose of this provision was to remove the disabilities of coverture, and to subject the wife, in all actions where she is authorized to sue or be sued alone, to the same proceedings, both direct and ancillary, as if she were feme sole; giving the right in such actions to a personal judgment against her and its enforcement by legal as distinguished from equitable remedies. The last clause of the section declares that “ in no case shall she be required to prosecute or defend by her next friend,” a superfluous provision, if she had already been required, in actions pertaining to her separate estate, to sue alone.
The remaining question arises under the act for the prevention of frauds and perjuries (1 S. & C. 656, § 5).
The view we take, of this question would make any opinion we might express on the binding effect of an ex-ecutory contract of a married woman to extend the time for the payment of a debt due her, mere dictum. We therefore leave that question undecided. It is alleged in the answer demurred to, that Mrs. Carter, the owner of the note, on the 14th day of August, 1875, over eleven months before the same became due, agreed with the defendant that if he would pay, in advance of its maturity, a part of the interest to become due on the note for the year it was *586 to run by its terms, and interest at the rate of seven per cent, for the extended time, at the end of such time, she would extend the time for the payment of the note for one year or more from the time it became due. He further alleged that he had paid the interest in advance as agreed. It was not alleged that the agreement was in writing. The fifth section of the statutes of frauds provides “ that no action shall be brought whereby to charge the defendant upou any agreement that is not to be performed within the space of one year from the making thereof, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto* by him or her lawfully authorized.” It is contended by the defendant: first, that the agreement to extend the time for the payment of the note for more than a year, as averred in the answer, must be presumed, on demurrer, to have been in writing ; and secoudly, if not to be so presumed, that by paying in advance a part of the interest to mature on July 30,1876, the agreement was withdrawn, by such part performance, from the operation of the statute.
Before the adoption of the code the practice was settled, that an agreement or promise required to be in writing might be declared on generally in a declaration, but a plea was required to be more definite and certain, and to show that the promise was in writing. This was so held in Headington v. Neff, 7 Ohio, 229. The defendant sought in that case to avoid liability incurred in executing a bond as surety for another by the plea that he had given notice to the obligee in the bond to proceed and collect the money due from the principal debtor, which the obligee had failed to do, the surety claiming the neglect to be such as to operate his discharge. The plea failed to show that the notice was in writing, as the law required it to be. A demurrer to the plea was sustained. In Stephen on Pleading, 381, the author in alluding to the subject, says: “ As to the rule under consideration, however, a distinction has been taken *587 between a declaration and plea; and it is said that though in the former .the plaintiff need not show the thing to be in writing, in the latter the defendant must.” The reason for the rule is given in Case v. Barber, T. Raym. 450, to be “ When the defendant pleads such an agreement in bar he must plead it so as to make it appear to the court that an action will lie upon it, for he shall not take away the present action and not give him another on the agreement pleaded.” Duppa v. Mayo, 1 Saund. 275c, note; 1 Chitty Pl. (16 Am. Ed.) 257, 810. We know of no good reason for departing from this rule. There is nothing in the code that requires it, and to reject or relax it, would be to sanction a looseness in pleading becoming altogether too prevalent.
The position assumed, that there was such part performance as to withdraw the agreement from the operation of the statute, is not supported by the most favorable view that can be taken for the plaintiff in error. There was no complete performance of his part of the contract ; nor was it expected or contemplated, or even possible, that it should or could be completed, according to its terms, within the year. The alleged consideration for the promise to extend the time was the payment of the first year’s interest in advance, within the year, and to pay interest on the note after the first year, at the rate of seven per cent., to be paid at the expiration of the extended time. This part of the promise could not, and was not'intended to be performed until after a year had elapsed. There are cases that hold that complete performance on one side within the year, if according to the understanding .of the parties, prevents the operation of the statute.
This doctrine was announced in Donellan v. Reed, 3 B. & Ad., 899, by Littledale, J., and approved in Cherry v. Hemming, 4 Exch. 631, by Baron Parke. See also Curtiss v. Sage, 35 Ill. 22; Elliott v. Turner, 4 Md. 76.
While in more modern and well considered cases the rule is held to be, that if the agreement or promise sought to be enforced is not in writing, and was not to be performed within a year, the agreement is within the statute. Pierce *588 v. Paine, 28 Vt. 84; Emery v. Smith, 46 N. H. 151; Frary v. Sterling, 99 Mass. 461; Lockwood v. Barnes, 3 Hill, 128; Boardwell v. Getman, 2 Denio, 87; 1 Smith’s Leading Cases, 145, et seq.; Brown on Frauds, sec. 286. But under the rule recognized in Donellan v. Reed, and Cherry v. Hemming, nothing less than complete performance by one party within the year will satisfy the statute.

Leave refused.