ALBERT BRUNETTE *vs.* GUILLAUME MYETTE ET AL.

JANUARY 4, 1918.

PRESENT: Parkhurst, C. J., Sweetland, Baker, Vincent, and Stearns, JJ.

*(1) Mortgages. Sale Under Junior Encumbrance.*

Where property is sold by authority of the power of sale in a second mortgage, the junior mortgagee can sell only what was conveyed to him, that is the title of the mortgagor, namely the equity of redemption, and the first mortgagee being under no obligation to take any action, the fact that it paid no attention to a sale under the second mortgage cannot in any way affect its rights.

*(2) Mortgages. Subrogation.*

Where property was sold under the power of sale in a second mortgage, subject to the first mortgage, and the purchaser thereafter voluntarily paid off the first mortgage without any agreement therefor with either the mortgagor or first mortgagee, but with the intention to extinguish it in order to make a saving in the payment of interest, he is not entitled to be subrogated to the rights of the first mortgagee but must account to the mortgagor for the surplus of the proceeds of the sale.

BILL IN EQUITY. Heard on appeal of respondent and dismissed.

STEARNS, J.  This is a bill in equity brought by the complainant, a mortgagor, to obtain an accounting of the proceeds of a sale under a second mortgage, and of the rents received by a third mortgagee who took possession of the premises before the mortgage sale.

The cause is before this court on the appeal of the respondents from the decree of the Superior Court granting an accounting. The facts are as follows: Wilfrid Soucy and his wife were the owners of the land in question, on which there was a mortgage of $1,300 in favor of the Woonsocket Institution for Savings. On April 17, 1913, Soucy and his wife made a second mortgage on the premises for $400 to J. F. A. Roberge, and in December of the same year they conveyed their in-

terest in the property, subject to the two mortgages, to
the complainant, Albert Brunette. Subsequently Brun-
ette mortgaged the premises, subject to the two prior
mortgages, to the respondent, Charles Reiniche, for
$1,700, which amount at the time of the hearing had been
reduced by payments made by Brunette, to $900. Roberge
died in January, 1914, and in February of that year the
respondent Myette was appointed administrator of his
estate.

In April, 1916, there was a default in the payment of
interest on the second mortgage to Roberge, and the
administrator, Myette, advertised the premises for sale
at public auction by notice in a newspaper, in which
notice it was stated that the sale would be made " by
virtue of the power of sale contained in that mortgage
deed made and executed by Wilfrid Soucy and Rachael
Soucy, his wife, both of the town of Lincoln, State of
Rhode Island, dated April 17, 1913, and recorded in the
town clerk's office of Lincoln in Book No. 21, page 182,
the conditions of said mortgage deed having been
broken." The power of sale in the mortgage thus re-
ferred to was in the usual form with provision for the
payment of any surplus, after the payment of the mort-
gage debt, and incidental charges, to the mortgagor
Soucy, his legal representatives or assigns and in this
second mortgage thus referred to, notice was given that
the same was made subject to the first mortgage.

A few days before the sale Reiniche, who apparently
intended to bid at the sale, wrote to the holder of the
first mortgage as follows:

" Institution for Savings Bank, Woonsocket.

" Dear Sirs: In answer to your letter received today,
I beg to inform you that the sale of March 10th was
annulled because it was not advertised according to law
and accordingly the house will be sold May 19th; here-
with a copy of the advertisement.

" Will you be kind enough to tell me whether lots No. 53 and 54, and all that is advertised, are covered by your mortgage, because lot No. 54 is not included in the notice.

" In regard to the interest, Mr. A. Brunette has told me that he was only paying 5½ per cent.

" If you want 6 per cent, I beg to advise you that if I purchase the property, I will withdraw the money which I have on books No. 67778 and 36345, and that I will pay you the $1,300, because I don't care to leave my money at 4 per cent, and pay you 6 per cent. I rather do business the right way.

" Sincerely yours,

" Charles Reiniche."

At the sale the auctioneer simply read the notice of sale and called for bids and the property was sold to Reiniche, the highest bidder, for $2,050.

No statement was made that the premises were to be sold free from any incumbrances and it is not claimed that the Woonsocket Institution for Savings consented to the sale free from its mortgage.

The auction sale occurred in the morning and in the afternoon of that day Reiniche went to the Woonsocket Institution for Savings and paid the bank's mortgage of $1,300. June 1, 1916, Myette, as administrator, by virtue of the power of sale in the second mortgage, executed a deed of the premises to Reiniche in which deed it was stated that the premises were conveyed subject to the mortgage of $1,300 in favor of the Woonsocket Institution for Savings. This deed was accepted by Reiniche and by him placed on record; Reiniche, however, refused to pay the $2,050 and now claims the right to apply $1,300 of said sum to the payment of the first mortgage, and after the payment of the second mortgage to apply the balance of about $250 in part payment of his $900

mortgage, leaving a balance as he claims of $650 due to him from the complainant.

The complainant made a demand on Myette for the surplus of the proceeds, who refused to give it to him, giving as his reason therefor that he had not received said money from Reiniche.

(1)    The first question is what estate was sold at the auction. The respondent Reiniche claims that the entire estate was sold, but it is clear that as the property was sold by authority of the power of sale contained in the second mortgage, that the junior mortgagee in the circumstances could only sell what was conveyed to him, that is the title of the mortgagor, namely the equity of redemption. The bank never authorized the sale of its title and the auctioneer did not undertake to sell it. The bank was under no obligation to take any action and as its title was on record, the fact that it paid no attention to the sale cannot in any way affect its rights. As the notice of sale contained a reference to the record of the second mortgage, and as this second mortgage disclosed the fact that it was given subject to the first mortgage, according to the terms of sale therefore, the property was sold subject to the first mortgage. That the respondent was in no way misled, but knew that he was buying the estate subject to the first mortgage, is evidenced by his letter to the bank and by his acceptance and recording of the deed from the administrator. In this connection it is significant to note that the respondent Reiniche did not appear as a witness and that no explanation of his failure to testify was offered.

The claim is made that as the respondent has paid the mortgage to the bank, in order to do equity the court should subrogate Reiniche to the bank, but the facts do not disclose a proper case for the application of this doctrine. The auctioneer obtained bids only for the value of the estate which he was authorized to sell and this estate was subject to the mortgage of the bank. The

respondent bought the estate subject to that mortgage, and to allow him now to pay off that mortgage out of the purchase price would result in charging the complainant, the mortgagor, twice over with the amount of the encumbrance. See *Skilton* v. *Roberts,* 129 Mass. 306. In Jones on Mortgages, Sec. 874b, the general principle (2) in regard to subrogation is thus stated: " In general it may be said that to entitle one to invoke the equitable right of subrogation he must either occupy the position of a surety of the debt, or must have made the payment under an agreement with the debtor or creditor that he should receive and hold an assignment of the debt as security, or he must stand in such a relation to the mortgaged premises that his interest cannot otherwise be adequately protected. The doctrine ' can only apply where the payment operates as a purchase or equitable assignment, and not as an extinguishment of a claim.' " In this case there was no agreement to hold the security; on the contrary the intention was to extinguish it in order to make a saving in the payment of interest; nor was it necessary to pay the mortgage of the bank in order to protect the respondent's rights. The respondent must account to the complainant for the surplus of the proceeds of the mortgage sale after deducting from said proceeds the expenses of the sale and the amounts due on the second and third mortgages.

The appeal of respondent is denied and dismissed. The decree of the Superior Court is affirmed and the cause is remanded to the Superior Court for further proceedings.

*Archambault & Jalbert,* for complainant.
*Elphege J. Daignault,* for respondent.